UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| V. MANE FILS S.A., | : | Civil Action No. 06-2304 (FLW) |
| **Plaintiff,** | : | |
| v. | : | |
| | : | M E M O R A N D U M |
| INTERNATIONAL FLAVORS AND FRAGRANCES, INC., | : | O P I N I O N |
| **Defendant.** | : | |

**HUGHES, U.S.M.J.**

**I.    INTRODUCTION**

This matter has come before the Court by Motion of Plaintiff V. Mane Fils S.A. ("Plaintiff") to Compel Production of all responsive communication and documents currently being withheld as privileged related to Plaintiff's patents and Defendant International Flavors and Fragrances, Inc. ("Defendant") pre-suit opinions of counsel [dkt. entry no. 23], returnable February 19, 2008.  Defendant filed opposition to Plaintiff's motion as well as a cross-motion seeking to have Plaintiff return the Morgan and Finnegan ("M&F") opinion and related documents.  Plaintiff filed a reply brief and opposition to Defendant's cross-motion on December 20, 2007.  The Court heard oral argument on this matter on February 6, 2008.  For the reasons stated herein, Plaintiff's motion to compel is granted and Defendant's cross-motion is denied.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

This litigation arises from an alleged patent infringement involving U.S. Patent Nos. 5,725,865 and 5,843,466 relating to the coolant composition monomenthyl succinate ("MMS"),

1

which is used as an additive in foods, beverages, and other products.  Plaintiff alleges that Defendant has willfully infringed these patents.

Around 1998, Plaintiff sold MMS to Procter & Gamble ("P&G") for use in a toothpaste flavoring formulation.  (Pl.s Br. at 2.)  P&G then outsourced its internal manufacturing of the flavoring formulation for this toothpaste to Defendant.  *Id.*  Shortly thereafter, P&G requested that Plaintiff ship MMS directly to Defendant so that Defendant could include Plaintiff's MMS in the P&G toothpaste formula.  *Id.* at 2-3.  At that time, Plaintiff received repeated assurances that Defendant would respect Plaintiff's patent rights and not attempt to substitute its own MMS for that purchased from Plaintiff.  *Id.* at 3.

From February 1998 to April 1998, Defendant allegedly solicited and received three opinions from outside patent counsel concerning Plaintiff's patents ("the Weilacher Opinions").  *Id.*  Around July 1998, Defendant approached P&G and offered to include its own MMS instead of using the MMS that Plaintiff supplied.  *Id.*  In an effort to allegedly persuade P&G that Defendant's actions were legally permissible, Defendant disclosed its opinion of counsel to P&G.  *Id.*  P&G apparently rejected the merits of Defendant's opinion and elected to require Defendant to continue purchasing MMS from Plaintiff.  *Id.*

In January 1999, Defendant again solicited and received another opinion from the same outside patent counsel, Weilacher, concerning Plaintiff's MMS patents.  *Id.*  This opinion stated, much like the first opinion, that Plaintiff's patents are invalid on the ground of obviousness.  *Id.*  The last paragraph of this opinion stated that it would be protected by the attorney-client privilege and that there should be no distribution of this opinion to anyone other than employees or officers of [defendant's] firm who will need to be aware of its contents.  *Id.* at 4.  Somewhere

2

between May 2001 and July 2001, Defendant sent those opinion letters to at least two other companies, Firmenich and Sensient, advising that Defendant had an opinion of counsel that concluded that Plaintiff's patents were invalid and thus not impede said companies from purchasing MMS from Defendant.  *Id.*  Both of these companies apparently also rejected Defendant's opinion letter.  *Id.*

In January of 2002, Defendant asked a second law firm, Morgan & Finnegan, to conduct a literature search relating to the use of MMS as a flavor additive.  *See id.* and Morgan & Finnegan 0016.  In this letter, Defendant attorney asks someone at the law firm to call him.  To date, no documents have been produced explaining what prompted the letter or the substance of any follow-up phone calls.  *Id.*  On July 3, 2002, this second law firm issued an opinion which was limited to the issue of obviousness, similar to the previous opinions.  *Id.*  To date, it is unknown why Defendant decided to get this second opinion.  *Id.*  Further, Defendant has not produced any internal correspondence related to its decision to obtain this second opinion.  *Id.*

Around April 2006, Defendant disclosed its opinion of counsel to Wrigley apparently to convince Wrigley to purchase Defendant's MMS.  *Id.*  At the same time, Plaintiff was selling MMS to Wrigley.  *Id.*  Like P&G, Firmenich, and Sensient before them, Wrigley rejected Defendant's opinion stating that Defendant's validity opinion "has not shown prior art or substance, only a belief that Mane has an invalid patent." *Id.* at 4-5; IFF001810.

In addition to disclosing opinion letters to P&G, Firmenich, Sensient and Wrigley, Defendant was supplying MMS to the Coca Cola Company for certain products that were sold in China in late 2005.  *Id.* at 5.  Plaintiff confronted both Defendant and Coca Cola.  On March 30, 2006, Defendant's counsel sent Plaintiff a copy of Defendant's opinion of counsel (Morgan &

3

Finnegan) concerning Plaintiff's MMS patents. *Id.* On March 31, 2006, Defendant sent the same opinion letter to Coca Cola. *Id.* Coca Cola then demanded indemnification from Defendant for any potential infringement liability related to Defendant's sales of MMS. *Id.* Coca Cola further ordered Defendant to remove all MMS from flavoring agents sold by Defendant to Coca Cola. *Id.* On June 16, 2006, in response to Plaintiff's demand to cease and desist, Defendant's vice president Christopher Gibson sent a letter to Plaintiff stating that "IFF believes it has a very solid defense to infringement, including a comprehensive opinion from a well recognized outside patent counsel." *Id.* at 6.

    Plaintiff seeks production of all of Defendant's opinions and communications related to infringement, validity, and enforceability of MMS patents. Further, Plaintiff also subpoenaed documents in possession of Defendant's outside counsel, Morgan & Finnegan. The legal basis for Plaintiff's argument is that Defendant has waived the attorney-client privilege and cannot use the privilege as both a "sword and a shield". *Id.* at 6, 9. Plaintiff seeks production surrounding Defendant's solicitation and direction regarding the opinions. *Id.* at 7. Plaintiff also seeks any and all statements of Defendant's in-house patent counsel and other internal communications. *Id.* Plaintiff alleges that Defendant has yet to provide a privilege log despite asserting that the pre-suit documents that have yet to be turned over are privileged. *Id.* at 6-7. They also state that Defendant has not produced any opinions on infringement or any other analysis of Defendant's potential liability. *Id.* at 7.

    Defendant argues that the Weilacher Opinions and the correspondence Defendant produced related to those opinions should not be discoverable before a finding that Defendant acted despite an objectively high likelihood that its actions constituted infringement of a valid

4

patent. (*See* Def.'s Opp. Br. at 3; *and In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007)). With respect to the Morgan & Finnegan opinion, Defendant asserts that it did not waive the attorney-client privilege. Defendant states that it objects to Plaintiff's discovery requests because three weeks after Defendant produced the Weilacher Opinion, the Morgan and Finnegan Opinion and related correspondence, the Federal Circuit issued its decision in *Seagate*, which raised the bar for establishing willful infringement and abandoned the rule that a party on notice of a patent has a duty to obtain an opinion of counsel. *Id.* Thus, so Defendant argues, they no longer owe a duty to obtain an opinion of counsel. Accordingly, Defendant's cross-motion demanding Plaintiff return Defendant's opinion counsel's opinion letters followed.

### III.   DISCUSSION

Plaintiff argues that Defendant waived the attorney-client privilege and must produce all the documents surrounding the Weilacher and Morgan & Finnegan Opinions. Defendant argues they did not waive the privilege and that, pursuant to *Seagate*, Plaintiff must return the Weilacher and Morgan & Finnegan opinions to Defendant. Each issue will be discussed in turn.

####    A.   Waiver of the Attorney-Client Privilege

The issue before the Court is whether Defendant's dissemination of the Morgan & Finnegan opinion and supplemental opinion as well as the Weilacher opinions constituted a deliberate disclosure that waives the attorney-client privilege as to those opinions in addition to all other communications and opinions.

As a general rule, purposeful and voluntary disclosure of attorney-client communications constitutes a waiver of privilege. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424, 1427 (3d Cir. 1991). When a patent infringer elects to disclose an opinion of

counsel, the result is a complete subject matter waiver extending to "any document or opinion that embodies or discusses a communication to or from [the defendant] concerning whether [the] patent is valid, enforceable, and infringed." *Intex Rec. Corp. v. Team Worldwide Corp.*, 439 F. Supp. 2d 46, 50 (D.D.C. 2006). Court have held that "[i]t would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while allowing the client to disclose other selected communications solely for self-serving purposes." *Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 979-80 (D. Del. 1982) (held that defendant waived privilege as to thirty-six (36) other documents on the same subject when defendant deliberately disclosed an opinion letter discussing whether defendant's actions "were infringing or would infringe" plaintiff's patent). Put another way, a party cannot "disclos[e] communications that support its position while simultaneously concealing communications that do not." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). It must be noted that once a party waives the attorney-client privilege, it relinquishes the privilege for all purposes and circumstances thereafter. *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 432 (D.N.J. 2003).[1]

In limited circumstances, such as inadvertent or unintentional disclosures, courts have limited the scope of waiver. However, where a party is attempting to gain an advantage or make offensive use through intentional disclosure, there must be a full subject matter waiver. *See CP Kelco v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003).

---

[1] The *Seagate* court also held that asserting the advice of counsel defense and disclosing the opinions of opinion counsel does not constitute a waiver of the attorney-client privilege. *Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Here, Defendant has not yet decided, in the wake of *Seagate*, whether it will assert an advice of counsel defense.

Here, Defendant has waived the attorney-client privilege. As the privilege cannot be used as both a sword and a shield, Defendant must disclose any and all of the documents surrounding these opinion letters as well as the opinions themselves.

Defendant argues that the 1998 Weilacher opinions were received some four years earlier than the 2002 Morgan and Finnegan opinions. (Def.'s Ltr. at 2.) They further argue that the 2002 supplement from Morgan & Finnegan concerned a Chinese patent opinion and had no connection with either of the U.S. patents that are at issue in this case. *Id.* The Court disagrees.

Contrary to Defendant's argument, the 2002 Morgan & Finnegan supplemental opinion was written by United States attorneys analyzing United States law and explicitly stated that it supplemented a 2002 opinion linked to Plaintiff's United States patents. (*See* Pl.'s Ltr. at 3.) The Court finds that the supplemental letter is linked to Plaintiff's United States patents and is not limited to Plaintiff's Chinese patent. Furthermore, regardless of whether the Morgan & Finnegan opinions originated four years after the Weilacher opinions, they nonetheless concern the same subject matter: Plaintiff's MMS patents. Moreover, the Court finds that Defendant's decision to disclose these opinion letters to Coca-Cola, Wrigley, and P&G, in addition to Plaintiff's counsel constitutes an irrevocable waiver of the attorney-client privilege. Therefore, Plaintiff has waived the attorney-client privilege with respect to the Weilacher and Morgan & Finnegan opinions.[2] Since "waiver extends beyond the document initially produced out of concern for fairness", *Fort James*, 412 F.3d at 1349, Defendant must produce all of the documents surrounding these opinion letters.

---

[2] Indeed, Defendant did not seek return of the Weilacher opinions in its cross-motion. (*See* Def.'s Ltr. at 3, FN4.)

Defendant argues that because of *Seagate*, discovery on Defendant's state of mind should be deferred until later in the litigation. Therefore, according to Defendant, all of the opinions are presently irrelevant and the opinions that have been disclosed to Plaintiff should be returned. The Court does not agree with Defendant's interpretation of *Seagate*.

B. <u>Seagate & Convolve</u>

The issue before the Court is whether *Seagate*, which changed how plaintiffs are to prove willful infringement, requires a Court to stay discovery on the issue of whether a Defendant *subjectively* believed it was committing willful infringement until *after* there has been a finding that a Defendant acted despite an *objectively* high likelihood that its actions constituted infringement of a valid patent act.

In 2007, the Federal Circuit reversed the standard that was set out in *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380 (Fed. Cir. 1983) and held that "proof of willful infringement permitting an enhanced damages requires at least a showing of objective recklessness." *Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Therefore, the Federal Circuit abandoned the affirmative duty of due care. *Id.* As such, there is no longer an "affirmative duty to obtain the opinion of counsel." *Id.* Rather, the court stated that "willful infringement is demonstrated by showing that a patentee, by clear and convincing evidence, acted despite an objectively high likelihood that its actions constituted infringement of a valid patent act." *Id.* If a patentee is deemed to have acted despite such objectively high standard, the court then must consider the patentee's subjective belief.

The Federal Circuit held that it is not a waiver of the attorney-client privilege if the defendant relied on an advice of counsel defense. *Id.* at 1374. However, the court was careful to

8

observe that they did not "purport to set out an absolute rule." *Id.* Rather, the court observed that "trial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel." *Id.* at 1375. Shortly following the *Seagate* decision, a trial court held that *Seagate* neither retracted defendant's prior acts of waiver nor did it require a plaintiff to first obtain a ruling that defendant's conduct was "objectively reckless" before engaging in discovery with respect to the defendant's subjective knowledge. *See Convolve, Inc. v. Compaq Computer Corp.*, 2007 U.S. Dist. LEXIS 87286 (S.D.N.Y. November 27, 2007).

Here, Defendant argues that the Court should not permit discovery on whether Defendant subjectively believed they committed infringement until after there has been a showing that Defendant objectively committed infringement. They further argue that they have not waived the attorney-client privilege pursuant to the *Seagate* decision. The Court disagrees.

Defendant's arguments are expressly the arguments that were rejected in *Convolve*. The Court finds that there is nothing in *Seagate* that would require the Court to stay discovery pending the resolution of the objective prong of the two-pronged *Seagate* analysis. Furthermore, there is nothing in *Seagate* that requires the Court to bifurcate discovery. Indeed, the *Seagate* court expressly indicated that they were not setting out an absolute rule and instructed trial courts to exercise their discretion in unique circumstances to extend waiver. *See Seagate*, 497 F.3d at 1374-75.

The Court agrees with the *Convolve* decision. Although *Seagate* changed the substantive landscape of demonstrating a patentee's willful infringement, it did not address discovery issues and specifically instructed the trial courts to exercise their discretion in unique circumstances. As such, Defendant's arguments must fail and their cross-motion to return the outside counsel

opinions denied.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to compel any and all of the documents surrounding the Weilacher and Morgan & Finnegan opinions is granted. It is further ordered that Defendant's cross-motion to have Plaintiff return the already disclosed outside counsel opinions is denied because they have irrevocably waived the attorney-client privilege. An appropriate Order accompanies this Memorandum Opinion.

**DATED: March 3, 2008**