*NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                    :
V. MANE FILS S.A.,                  :     Civil Action No. 06-2304 (FLW)
                                    :
        Plaintiff,              :
                                    :
    v.                            :
                                    :     **OPINION**
INTERNATIONAL FLAVORS AND           :
FRAGRANCES INC.,                    :
                                    :
        Defendant.              :
_____:

**WOLFSON, United States District Judge:**

      Presently before the Court is Defendant, International Flavors and Fragrances Inc.'s ("Defendant" or "IFF"), appeal of an Order, dated July 8, 2008, by the Honorable Magistrate Judge John J. Hughes, U.S.M.J., ("Judge Hughes") which denied Defendant's motion to compel a response to an interrogatory that requested Plaintiff, V. Mane Fils S.A. ("Plaintiff or "Mane"), to identity any and all of its products that contain monomenthyl succinate ("MMS") and the levels of MMS in those products.  Defendant argues that the Court should use a de novo standard of review and, applying that standard, vacate the Magistrate Judge's Order, and compel Plaintiff to provide the levels of MMS in Plaintiff's products, as they are relevant to Defendant's claims of patent invalidity.  Plaintiff argues that the Magistrate Judge's finding is entitled to great deference and should be reversed only for an abuse of discretion.  Plaintiff further states that there was no abuse of discretion here because IFF cannot use Mane's products to make arguments about patent claim construction and infringement.  The Court has considered the parties' moving, opposition, and reply papers.  For the reasons that

follow, the Court denies Defendant's Appeal of the Magistrate Judge's July 8, 2008 Order Denying its Motion to Compel Interrogatory Response ("July 8, 2008 Order").

**I.  Procedural History and Background**

The Court will only recount facts relevant for the purpose of this motion.  On May 22, 2006,  Plaintiff, V. Mane Fils S.A. ("Plaintiff or "Mane"), filed this suit against Defendant, International Flavors and Fragrances Inc.'s ("Defendant" or "IFF"), for patent infringement.

Plaintiff alleges that Defendant has willfully infringed on U.S. Patent Nos. 5,725,865 ("the '865 Patent") and 5,843,466 ("the '466 Patent"), relating to the coolant composition monomenthyl succinate ("MMS"), which is used as an additive in foods, beverages, and other products. The patents-in-suit do not claim MMS outright, but rather are directed to compositions and products that include an "effective amount" of MMS.  Defendant denies Plaintiff's claims, and asserts that one of its defenses is that Mane's patents are invalid under 35 U.S.C. § 103 in light of the prior art.  Mane argues that it did not have to claim commercial success to support an assertion of non-obviousness because IFF neither plead patent invalidity nor that the patents-in-suit are obvious.  IFF argues, however, that the obviousness defense has always been in the case, and was expressly plead in its recently filed Answer to Mane's Second Amended Complaint.  Moreover, in response to IFF's obviousness defense, Mane has asserted that certain "secondary indicia of non-obviousness confirm the validity of the patents in suit," See Plaintiff's Supplemental Response to Interrogatory No. 20  at 7,  including that the commercial success of the patented subject matter is shown by the sales data

previously provided by Mane.

On March 4, 2008, Judge Hughes issued an Order and Opinion granting Plaintiff's motion to compel production of all responsive communications and documents withheld as privileged and denying Defendant's cross-motion to seeking to have Plaintiff return documents.  On April 25, 2008, Judge Hughes issued an Order that the testing protocol of MMG Formulations be provided by IFF.  Judge Hughes granted Plaintiff's motion for leave to file an amended compliant in an Order and Opinion dated June 23, 2008.

During the extensive discovery phase of this complex patent litigation, IFF's Interrogatory No. 17 requested that Mane identify the concentration levels of MMS in Mane's products.  In Plaintiff's Amended Response to Defendant's Initial Set of Interrogatories to Plaintiff, Mane objected to this interrogatory as irrelevant, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Mane further objected to the interrogatory to the extent that it seeks disclosure of information or documents protected by attorney-client privilege, attorney work product privilege, or other applicable privilege.  On May 14, 2008, Judge Hughes held a status conference during which he briefly heard the parties on the issue of Mane disclosing the levels of MMS in its products.  See Transcript of Discovery Conference Before the Honorable John J. Hughes, U.S.M.J., May 14, 2008 ("Tr.").  Richard Brown, Esq., on IFF's behalf, stated that the amount of MMS may be relevant depending on how claims are constructed and as a secondary consideration for why the patents should be declared invalid for non-obvious reasons. Id. at 14.  Marvin Petry, Esq., on Mane's behalf, countered that the level of MMS is not relevant to the issue of infringement, as

evident from previous case law holding that the patentee's products are simply not relevant, and thus discovery as to these products is unnecessary. Id. at 18-19. At that time, Judge Hughes agreed with Mane and declined to require the production of the levels of MMS in Mane's products. Id. at 20.

On June 13, 2008, Defendant filed a Motion to Compel Interrogatory Responses, specifically Interrogatory No. 17: "Identify each and every product of yours that contains monomenthyl succinate or any salt thereof, and state the level of monomenthyl succinate or any salt thereof in each product." Defendant contended that the levels of MMS in Mane's products are relevant to Mane's infringement claims and to IFF's claims of patent invalidity. On June 23, 2008, Plaintiff filed its opposition arguing that these concentration levels are not relevant to either claim and Mane need not disclose them. Judge Hughes issued the July 8, 2008 Order denying IFF's motion to compel Mane to respond to IFF's Interrogatory No. 17. Judge Hughes recounted both parties' arguments, noted that there is a two-part analysis for determining patent infringement as articulated in Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336 (Fed. Cir. 2002), and reiterated that "[i]nfringement is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed." Order by the Honorable John J. Hughes, U.S.M.J., July 8, 2008 ("Order") at 1-2. Judge Hughes found pursuant to Fed. R. Civ. P. 26(b)(1) that the levels of MMS in Plaintiff's products are not "relevant to any party's claim or defense" because a patentee's products are not considered in a patent infringement analysis. Id.

Judge Hughes then addressed IFF's second argument regarding the relevance of the MMS levels in Mane's products, noting that 35 U.S.C. § 103 governs non-obvious

4

subject matter as it pertains to conditions for patentability and that a patent may not be obtained when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to person having ordinary skill in the art to which said subject matter pertains." Id. at 2-3. Judge Hughes determined that while the Supreme Court found that "commercial success" may be relevant as a secondary consideration in determining obviousness or non-obviousness, the Plaintiff may assert commercial success by referencing its products containing MMS without disclosing the levels of MMS contained in those products. Id. at 3. Judge Hughes also found that the levels of MMS in Plaintiff's products are not relevant to Plaintiff's assertion of commercial success in response to Defendant's Interrogatory No. 20. Id.

IFF appeals the Magistrate Judge's July 8, 2008 Order denying its motion to compel a response to Interrogatory No. 17, arguing that Judge Hughes incorrectly found that Mane may assert commercial success by referencing its products containing MMS without disclosing the levels of MMS contained in those products; rather he should have found that the levels are relevant and should be disclosed. IFF argues that because the "Magistrate Judge's Order uses the wrong legal standard concerning proof of non-obviousness through commercial success, this Court should review that issue de novo."

Mane contends that IFF misstates the standard of review, as a magistrate judge's ruling is entitled to great deference and is reversible only for abuse of discretion. Mane states that Judge Hughes did not abuse his discretion because he properly balanced IFF's improper purpose for requesting the level of MMS in its products with the limited, contingent discovery need when he denied IFF's motion to compel. Because the Court

5

agrees that Judge Hughes did not abuse his discretion, IFF's appeal of the July 8, 2008 Order is denied.

## II. Discussion

### A. Standard of Review

"A United States Magistrate Judge may hear and determine any [non-dispositive] pretrial matter pending before the court." Cardona v. General Motors Corp., 942 F. Supp. 968, 970 (D.N.J. 1996); see also Fed. R. Civ. P. 72(a). The district court will only reverse a magistrate judge's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. (c)(1)(A). The district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. Bowen v. Parking Auth. of City of Camden, 2002 U.S. Dist. LEXIS 14585, 2002 WL 1754493 (D.N.J. July 30, 2002). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000). A magistrate judge's ruling concerning discovery is non-dispositive. See, e.g., Cunningham v. Hamilton County, Ohio, 527 U.S. 198, 201 (1999); Tarlton v. Cumberland County Corr. Facility, 192 F.R.D. 165 (D.N.J. 2000). Where the appeal seeks review of a matter within the broad discretion of the magistrate judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, is applied. Port Auth. v. Affiliated FM Ins. Co., 2001 U.S. Dist. LEXIS 7579 (D.N.J. Mar. 29, 2001); see also Env't Tectonics Corp., Int'l v. W.S. Kirkpatrick & Co., Inc., 659 F.

Supp. 1381, 1399 (D.N.J. 1987) (citations omitted), mod., 847 F.2d 1052 (3d Cir. 1988), aff'd, 493 U.S. 400 (1990); Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998).  An abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them."  United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir. 2003), cert. denied, 541 U.S. 1074 (2004) (internal citations omitted).  "This test displays considerable deference to the determination of magistrates in such matters."  7 Moore's Federal Practice P 72.03(7.-3) at 72-42 (1989).  Indeed, "[e]rrors of law or fact may constitute such abuse." SG Cowen Sec. Corp. v. Messih, 224 F.3d 79, 81 (2d Cir. 2000).

**B. The Magistrate Judge Did Not Abuse His Discretion**

IFF argues that because Judge Hughes' premise that Mane may assert commercial success of its products without disclosing their MMS levels is wrong as a matter of law, his ruling on the relevancy of MMS concentrations in Mane's products should be reversed.  Whether this Court may have come to a different conclusion than Judge Hughes is not the inquiry here.  Rather, because this is an appeal of a magistrate judge's ruling of a discovery dispute, the relevant issue is whether Judge Hughes abused his discretion.  Because Judge Hughes did not abuse his discretion, the Court denies Defendant's appeal.

The parties' initial arguments are similar to those raised here.  While IFF originally provided two grounds for compelling Mane to produce the requested

7

information, IFF only focuses on one of these grounds in this appeal.[1]  IFF argues that because Mane placed MMS products and compositions in issue by asserting commercial success of patented products as a secondary indicium of non-obviousness, the levels of MMS in Mane's products are directly relevant to IFF's obviousness defense.  IFF states that Mane's patent claims are invalid as obvious in light of prior art, and in response to its obviousness defense and in Mane's supplemental response to Interrogatory No. 20, Mane has asserted certain "secondary indicia of non-obviousness confirm the validity of the patents in suit," including commercial success.   Mane responds that commercial success is known as a "secondary indicia of non-obviousness" that may be offered by a

---

[1] IFF's other argument is that, depending on the ultimate construction of "effective amount," the concentration of MMS in Mane's products may be relevant to the infringement determination.  IFF argues that Judge Hughes' conclusion that "[i]nfringement is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed," Order at 2, missed IFF's argument because IFF does not intend a comparison of the accused products with Mane's commercial embodiments.

IFF argues that if "effective amount" were construed in functional language, the fact that none of its products have MMS below a certain concentration would at least be relevant to show that MMS concentrations below that level do not achieve the required outcome (and so do not infringe).  IFF states, for example, that evidence that none of Mane's commercial embodiments has an MMS concentration below 0.001% would have such relevance and might even lead to an admission that lower concentrations are not effective.

Mane argues that Judge Hughes properly denied IFF's motion to compel the level of MMS in Mane's products because IFF cannot use these levels to evaluate whether Mane's products contain an effective amount of MMS, as this is an impermissible and inadmissible attempt by IFF to use these levels of MMS in Mane's products to make arguments about claim construction and infringement.  Plaintiff provided Defendant with cases holding that the composition of the patentee's products is never admissible or relevant to infringement analysis or claim construction.  See AquaTex Indus. v. Techniche Solutions, 479 F.3d 1320, 1328 ("[The infringement] inquiry leaves no room for consideration of the patentee's product.").  IFF states that it focuses on the relevance of MMS levels with respect to patent invalidity because the error below on this issue is clear.  The Court disagrees.

patentee in rebuttal of a prima facie case of obviousness made by the infringer and IFF has not made a prima facie showing of obviousness.  See WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1359 (Fed. Cir. 1999).  IFF, however, claims that the levels of MMS in Mane's products are relevant because there is no other way to establish or challenge whether its products qualify as commercially successful embodiments of its claimed inventions.

      The Federal Circuit has expressly held that a "nexus between commercial success and the claimed features [of the patent] is required."  Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1130 (Fed. Cir. 2000).  The Federal Circuit recently stated that "commercial success or other secondary considerations may presumptively be attributed to the patented invention only where the marketed product embodies the claimed features, and is coextensive with them."  Muniaction, Inc. v. Thomson Corp., 532 F.3d 1318, 1328 (Fed. Cir. 2008) (internal quotations and citations omitted).  IFF argues that this nexus cannot be established without Mane disclosing the level of MMS in each of its commercial embodiments because Mane's patents do not read on MMS itself nor do they read on all products containing MMS, the asserted claims read only on certain products containing an "effective amount" of MMS.

      Even if this Court might have decided the matter differently, this alone is insufficient to find an abuse of discretion.  In this case, Judge Hughes did not ignore a material factor deserving significant weight, rely on an improper factor, or make a serious mistake in weighing all of the factors assessed.  Judge Hughes weighed Defendant's proffered reasons for the relevance and need for disclosure of Plaintiff's MMS levels in its products, first in a discovery conference on May 14, 2008, and

thereafter, reviewed both parties' papers regarding Defendant's Motion to Compel before issuing the July 8, 2008 Order. Judge Hughes considered Plaintiff's opposition when applying the two-part analysis, articulated in <u>Allen Eng'g Corp.</u>, for determining patent infringement. Order at 1-2. In addition, Judge Hughes noted that the <u>Allen Eng'g Corp.</u> court stated that "[i]nfringement is determined by comparing the accused devices not with products made by the patentee but with the claims of the patent as properly construed." <u>Id.</u> at 2. Judge Hughes then found that the levels of MMS in Plaintiff's products are not "relevant to any party's claim or defense pursuant to <u>Fed. R. Civ. P.</u> 26(b)(1) because a patentee's products are not considered in a patent infringement analysis. <u>Id.</u>

After hearing oral argument and considering the arguments in the parties' moving papers, Judge Hughes determined that while the Supreme Court found that "commercial success" may be relevant as a secondary consideration in determining obviousness or non-obviousness, the Plaintiff may assert commercial success by referencing its products containing MMS without disclosing the levels of MMS contained in those products. <u>Id.</u> at 3 (citing <u>Graham v. John Deere Co. of Kansas City</u>, 383 U.S. 1 (1966)). While not explicitly stated in the order, Judge Hughes took other considerations into account when issuing his ruling. During the discovery hearing on May 14, 2008, Judge Hughes recognized that Mane, through counsel Marvin Petry, Esq., certified in open court on the record that each of the products that Mane asserts are covered by the patent as containing MMS, in fact contain MMS. Tr. at 17. Judge Hughes also took into consideration IFF's improper request of the levels of MMS for the infringement analysis because the patentee's products are not relevant.

Mane and IFF are competitors and while it would be useful for IFF to learn sensitive business information about its competitor, Judge Hughes properly balanced IFF's improper purpose for requesting the level of MMS in its products and the potential business harm with the limited, contingent discovery need when he denied IFF's motion to compel.[2]  Judge Hughes then determined that even though obviousness may be relevant in this case, as IFF argues, because MMS levels in Mane's products are relevant to the commercial success of Mane's products, there are other ways in which IFF could assert commercial success without Mane's disclosure of the levels of MMS in its products.  Judge Hughes found that Mane's sworn identification of its products covered by the patents-in-suit and its sales data is sufficient for purposes of this rebuttal argument of commercial success.  Moreover, IFF, while arguing its relevance, does not dispute that it may assert commercial success without Mane's disclosure of the levels of MMS in its products.  Therefore, Judge Hughes did not prevent IFF from putting forth a defense of obviousness nor abuse his discretion in denying Defendant's Motion to Compel Answer to Interrogatory Response from Plaintiff.

## III. Conclusion

For the foregoing reasons, Defendant's Objection to July 8, 2008 Order Denying its Motion to Compel Interrogatory Response is denied.

---

[2] The Court notes that IFF argued before Judge Hughes, and continues to argue here, that it must know the levels of MMS in Mane's products to evaluate Mane's sales data and verify "whether Mane's products contain an 'effective amount' of MMS," which is a backdoor, pretextual attempt to learn its competitor's composition levels.  It appears that Judge Hughes already considered this improper purpose and this further gives weight to the fact that he did not abuse his discretion.

Dated Oct 15 , 2008 /s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge