RECEIVED
MAY 6 2010
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| V. MANE FILS, S.A., | |
| Plaintiff, | Civil Action No.: 06-2304 (FLW) |
| v. | |
| INTERNATIONAL FLAVORS AND FRAGRANCES INC., | MEMORANDUM OPINION |
| Defendant. | |

**ARPERT, U.S.M.J.**

I.  **INTRODUCTION**

This matter comes before the Court on separate Motions by Defendant International Flavors and Fragrances, Inc. ("Defendant" or "IFF") to Preclude Plaintiff's Untimely Infringement Assertions [dkt. entry no. 122] and to Compel the Re-Opening of the Deposition of Jean Mane ("Mr. Mane") [dkt. entry no. 125]. Plaintiff V. Mane Fils, S.A. ("Plaintiff" or "Mane") opposed the Motions on December 8, 2009 and December 21, 2009, respectively. IFF filed a reply brief in support of its Motion to Preclude Plaintiff's Untimely Infringement Assertions on December 14, 2009 and Mane filed a sur-reply on December 17, 2009. The Court heard oral argument on February 5, 2010. Thereafter, the Court permitted IFF to supplement the record with an Affidavit of Richard H. Brown as well as the Supplemental Expert Report of Michelle M. Riley and, as a result, has also considered Mane's March 1, 2010 response. For the reasons stated herein, IFF's Motion to Preclude Plaintiff's Untimely Infringement Assertions is denied; and its Motion to Compel the Re-Opening of the Deposition of Jean Mane is granted.

## II. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Defendant has infringed its U.S. Patent Nos. 5,725,865 (the "'865 Patent") and 5,843,466 (the "'466 Patent") relating to the coolant composition monomenthyl succinante ("MMS"), which is used as an additive in foods, beverages and other products. The instant Motions specifically address (1) whether Mane should be precluded from pursuing infringement assertions concerning IFF's monomenthyl glutarate ("MMG") products (referred to by Mane as "Cooler 2"), which IFF alleges were not properly disclosed as required by Court order and (2) whether IFF is entitled to re-open the deposition of Jean Mane. IFF also argues that the Report of Mane's expert, Francis Farrell (the "Farrell Report") asserts a new theory, that all batches of IFF's "neat MMG" include a trace quantity of MMS. IFF claims that the late assertion of this claim by Mane violates this Court's October 24, 2008 Scheduling Order, which directed that: "Mane shall provide IFF with its full and final claim assertions no later than November 14, 2008." *See* [dkt. entry no. 71]. Mane argues that it has asserted infringement against MMG/Cooler 2 since the outset of this litigation.

On July 24 and 25, 2008, IFF deposed Jean Mane, pursuant to Federal Rule of Civil Procedure 30(b)(6) and in his individual capacity. In May 2009, Mane sought to designate Jane Mane as its in-house representative, which would allow him access to the materials that IFF had designated as "Confidential-Attorneys Eyes Only Information" under the June 5, 2007 Protective Order (the "AEO Materials"). IFF expressed concern that granting Mr. Mane access to the AEO Materials might lead to new contentions about which he had not been deposed, and indicated that if such occurred IFF would require Mane to make Mr. Mane available for another deposition in New York. In July, 2009, the Court granted Mane's application to designate Jean Mane as its in-

house representative.

On September 18, 2009, Mane served a Supplemental Response to Defendant's Third Set of Interrogatories to which it attached a verification signed by Mr. Mane attesting to the truth of the facts set forth therein. On September 20, 2009, Mane submitted two expert reports that together state a claim of over $25 million in damages based upon IFF's sales of MMG products. IFF argues, based upon the "new allegations" in Mane's Supplemental Response, that it is entitled to redepose Jean Mane. On October 15, 2009, IFF contacted Mane asking to re-open the deposition of Mr. Mane and Mane declined. Mane also contends that there is nothing new in its Supplemental Response to warrant re-opening Mr. Mane's deposition. Therefore, pending before this Court are the instant Motions by IFF to Preclude Plaintiff's Untimely Infringement Assertions and to Compel the Re-Opening of the Deposition of Jean Mane.

### A. IFF's Arguments in Support of its Motion to Preclude

IFF argues that the Court should grant its Motion to Preclude because Mane's recent disclosure that it intends to pursue infringement claims against all of IFF's MMG Products and also assert claims 9 through 11 of the '865 patent against IFF's MMS products violates the Court's previous orders and prejudices IFF. (IFF's Br. at 1.)

First, IFF asserts that on November 14, 2008 Mane served a *221-page* set of claim assertions, which were directed almost exclusively to MMS Products, with the exception of two paragraphs directed to MMG Products. *Id.* at 2. Specifically, IFF argues that Mane's claim assertions were incomplete and wholly inadequate in that they fail to articulate any theory concerning infringement by IFF's MMG Products since "Mane stated only that it 'appears' that MMG Formulations 'may' indirectly infringe claims 'such as' claim 13 of '865 Patent and claim

3

5 of the '466 Patent." *Id.* at 8. IFF maintains that it informed Mane by letter dated November 24, 2008 of the inadequacies of the two paragraphs directed to the MMG Products and that IFF regarded MMG as out of the case. In as much as Mane never responded, IFF contends, it had no reason to make a motion at that time. (IFF's Reply Br. at 2.) IFF also maintains that "[n]otwithstanding its final contentions, Mane sought to re-test certain MMG Products in November 2008, [however,] [d]uring the December 4, 2008 telephone conference in which Judge Hughes denied Mane's request for further testing, he called Mane's MMG testing thus far a 'bust' . . . [and] observed that further testing would serve no purpose as Mane's infringement contentions did not include IFF's MMG Products." (IFF's Br. at 2.)

Further, IFF argues that on September 20, 2009 Mane "ambushed" IFF when it served the Farrell Report, which alleged for the first time that "neat MMG" always contains an "effective amount" of MMS and served as a basis for Mane's damages expert to calculate damages related to IFF's neat MMG sales in an amount greater than $25 million. *Id.* at 10. IFF emphasizes that it "pointed out the defects in Mane's MMG claims shortly after receiving them . . . [and] Judge Hughes noted the shortcoming himself on December 4, 2008 [y]et, Mane's experts now rely solely on a test result that was within Mane's possession long before the November 14, 2008 deadline to assert 'full and final' claim assertions." *Id.* at 14.

Therefore, IFF argues that Mane's September 20, 2009 introduction of a new theory stating a claim in excess of $25 million based on the sales of MMG Products by IFF, violates both the Court's October 24, 2008 Scheduling Order requiring Mane's full and final claim assertions to be served by November 14, 2008 and this Court's December 15, 2008 Order memorializing the December 4, 2008 determination by Judge Hughes to preclude further MMG

4

testing. IFF further argues that it will be prejudiced if Mane's untimely claim assertions are not precluded because "IFF was forced to, among other things, develop new evidence of its ability (and the cost) to ensure that any MMS in MMG is below a *de minimus* level." *Id.* at 15. IFF insists that it is entitled to Rule 37 dismissal sanction in response to Mane's violation of this Court's discovery orders and that the Court should preclude Mane from asserting claims against both IFF's MMG Products and MMS Products under Claims 9 through 11 of the '865 patent, which are included in the Farrell Report, but were not included in Mane's November 24, 2008 "full and final" claim assertions.

### B. Mane's Arguments in Opposition to the Motion to Preclude

In opposition, Mane argues that there is no violation of any discovery order which justifies the imposition of Rule 37 sanctions. Throughout its papers, Mane refers to MMG Products as "Cooler 2 Products". First, Mane asserts that it most definitely included Cooler 2 Products in its November 24, 2008 claim assertions and "[o]nly now, a year later does IFF file a motion complaining about the adequacy of those assertions in a gambit to have the assertions stricken." (Mane's Opp'n Br. at 1.) Next, Mane asserts that contrary to IFF's contentions, Judge Hughes was explicit in his December 4, 2008 determination "that his denial of additional Cooler 2 product testing was **without prejudice** to Mane's infringement assertions against Cooler 2." *Id.* Mane also asserts that IFF cannot claim lack of notice when throughout the case it acknowledged and then responded to Mane's claims. Specifically, IFF responded to Mane's Cooler 2 assertions in its claim construction brief in January 2009, submitted expert reports attempting to rebut Mane's Cooler 2 claims in November 2009, and paid an expert who was retained in August 2008 for services rendered during 2009 in preparing his report. *Id.* at 3.

Against this backdrop, Mane argues that the instant Motion "is an attempt to prevent disclosure of damaging information that IFF gave to its experts . . . [specifically,] that Cooler 2 contains levels of MMS as a result of IFF's manufacturing process." *Id.* Mane asserts that "[a]lthough IFF previously disputed the MMS content of Cooler 2 in repeated representations to the Court during fact discovery, Mane's position has now been confirmed by IFF's own experts – '[MMS] is present as an impurity in one of the raw materials, glutaric anhydride, used to make MMG.'" *Id.* at 15 (quoting Carter Report, Owsley Cert. Ex. B, at 33). Mane repeatedly emphasizes that because IFF retained its own Cooler 2 expert more than a year prior to September 20, 2009, it cannot claim either prejudice or surprise. *Id.* at 16. Lastly, Mane argues that IFF's Motion is an attempt to obtain "an improper and premature merits adjudication without having to disclose damaging information related to the MMS content of Cooler 2." *Id.* at 18.

### C. **IFF's Arguments in Support of its Motion to Compel**

IFF makes three arguments as to why the re-opening of the deposition of Mr. Mane should be permitted pursuant to Rule 37(a). Specifically, IFF argues (1) in September 2009, more than a year after Mr. Mane was deposed, Mane filed a Supplementary Response that included significant new allegations regarding the harm Mane allegedly suffered as a result of IFF's alleged tortious interference and; (2) additional new developments in the case constitute good cause for re-opening the deposition; and (3) no consideration outlined in Rule 26(b)(2)(C) weighs against it. (IFF's Br. at 1.)

IFF asserts that materially new information was introduced in Mane's September 18, 2009 Supplemental Response, in which Mr. Mane identified companies with which Mane had existing and/or prospective contractual relations and alleges that IFF's interference with them

6

substantially damaged Mane's business. *Id.* at 4. IFF contends that during Mr. Mane's deposition he never mentioned eight of the eleven companies identified in the September 18, 2009 Supplemental Response, "[y]et, as laid out in the Riley Report, Mane seeks disgorgement of ***up to $250 million*** for IFF's alleged tortious interference with the customer relationships now identified by Mr. Mane." *Id.* at 5. IFF further contends that Mr. Mane has material information about Mane's claims because after having access to the AEO Materials Mr. Mane verified the September 18 Supplemental Response, which contains new information not found in Mane's initial, unverified responses to IFF's third set of interrogatories. *Id.* At 6. IFF asserts that "[g]iven the magnitude of Mane's disgorgement claim (which had not previously been disclosed) and the lack of documentary support for such a claim, re-opening the deposition of Jean Mane is both necessary and appropriate." *Id.* IFF explains that the topics to be addressed will include "(1) the precise terms of any existing relations – contractual or otherwise – between Mane and these customers, and the sales efforts Mane made with respect to prospective customers; (2) the basis for Mane's allegations that IFF wrongfully interfered with those relationships; and (3) the damage Mane allegedly suffered as a result of any such interference." *Id.* at 7.

IFF argues that it will be unfairly prejudiced if it is not permitted to re-depose Mr. Mane in light of the fact that Mane's September 18 Supplemental Response extends Mane's factual contentions into new territory. *Id.* (citing *Fisher v. Borden, Inc.*, Civ. No. 92-4306, 1994 U.S. Dist. LEXIS 21275, at *9-12 (D.N.J. Oct. 31, 1994)) (granting plaintiff's motion to compel a second deposition of defendant's engineering manager on limited topics where "the factual contentions surrounding the issues in th[e] case [were] continually evolving", "[p]laintiffs' current requests for discovery [were] therefore supplemental, not duplicative", and "[t]he

7

relevant of th[e] information outweigh[ed] its burden of production").

Next, IFF argues that in addition to the new information contained in the September 18 Supplemental Response, Mane's damages expert report includes a new theory of damages with respect to Mane's non-patent claims about which IFF has not had the opportunity to depose Mr. Mane. *Id.* at 8. IFF asserts that "[d]uring his 30(b)(6) deposition in July 2008, Mr. Mane denied any personal knowledge concerning many of IFF's alleged acts of unfair competition and tortious interference." *Id.* at 9. However, in her report, Ms. Riley relies on a August 30, 2009 interview she conducted of Mr. Mane "as part of the basis for her remarkably high damages opinion with regard to Mane's non-patent claims." *Id.* Therefore, IFF believes that it is entitled to depose Mr. Mane regarding the substance of the August 30, 2009 interview.

Lastly, IFF argues that none of the factors in Rule 26(b)(2)(C) dictates against a limited re-opening of Mr. Mane's deposition. IFF asserts that the discovery sought by its Motion to Compel is not "unreasonably cumulative or duplicative" and can only be obtained from Mr. Mane since the information is solely in his possession. *Id.* at 10. IFF also asserts that "because the September 18 Supplemental Report was served after the conclusion of fact discovery in this case, IFF has had no other opportunity to obtain the information it seeks." *Id.* at 10-11. IFF further asserts that a limited re-opening of Mr. Mane's deposition places no undue burden on Mane that would outweigh its benefit to IFF. *Id.* at 11.

D. **Mane's Arguments in Opposition to the Motion to Compel**

In opposition, Mane argues that IFF's Motion to Compel the re-opening of Mr. Mane's deposition should be denied because (1) IFF's prior strategy precludes its request to re-open discovery under Rule 16; (2) IFF's request would cause prejudice and improper tactical

8

advantage; and (3) all factors under Rule 30(a)(2) and Rule 26(b)(2)(C) weigh against a third day of deposition. Mane notes that "[a]lthough Mane rejected IFF's demand for a third day of deposition . . . Mane voluntarily provided additional information . . . [and] offered to provide additional detail and supplement the interrogatory responses even further if IFF lifted the 'No JMM Access' . . . [but] IFF declined that offer." (Mane's Opp'n Br. at 12-13.)

Mane argues that "[g]iven IFF's discovery tactics and decisions over the last three years, it cannot meet the diligence showing required under Rule 16 to deviate from the case scheduling order." *Id.* at 15. Mane emphasizes that "IFF elected to depose Jean Mane at the outset of the case, and before the majority of IFF's document production." *Id.* In response to IFF's position that Mane's September 18 Supplement Response was inconsistent with Mr. Mane's prior deposition, Mane asserts that "[o]bviously, Jean Mane did not testify about evidence that IFF deliberately shielded from him or that IFF had not yet produced, [n]or did Jean Mane give testimony on questions that IFF elected not to ask." *Id.* at 16. Mane also asserts that it "responded in detail to each of IFF's purported 'new developments' in its letter of October 28, 2009." *Id.* Mane further asserts that for IFF to now seek testimony concerning the MMS content of Cooler 2, directly conflicts with IFF's prior history, which includes claiming ignorance to "Mane's infringement theory, disclosed at the outset of the case, that Cooler 2 invariably contains infringing levels of MMS" and "previously electi[ing] not to question Jean Mane about that theory." *Id.* at 18. Mane points out that IFF's Motion to Preclude "seeks to avoid having to supplement discovery responses regarding the MMS content of Cooler 2, while the [M]otion for the re-deposition seeks leave to ask Jean Mane questions about that same subject matter." *Id.*

Next, Mane argues that re-deposing Mr. Mane would unfairly prejudice Mane and give

9

IFF a tactical advantage in light of the fact that both parties have already submitted their expert reports. Mane asserts that "IFF's [M]otion makes clear that it wants to utilize a second deposition to cross-examine Mane's CEO regarding the content of those reports" and proffers that "Courts recognize that where expert reports have already been exchanged, it would tactically prejudice the non-moving party to re-open fact discovery." *Id.* at 20 (citing *Freeman v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 32522, *4 (D.V.I. Apr. 14, 2009)). Mane further asserts that Mr. Mane is the CEO of a global company and should not have to rearrange his schedule to prepare for a third day of deposition to correct IFF's own miscalculated tactics. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-36 (E.D. Pa. 2008)) (burden and distraction of re-preparation for an untimely second deposition constitutes unfair prejudice and tactical disadvantage).

Lastly, Mane argues that all factors under Rules 30(a)(2) and 26(b)(2) weigh against IFF's request to re-open Mr. Mane's deposition. Specifically, "[a] second, and in this case third, day of deposition is presumptively cumulative, even where there is some putative need." *Id.* at 21 (citations omitted). Mane also insists that "there are far 'more convenient, less burdensome, [and] less expensive' alternative vehicles to satisfy IFF's putative need", such as its repeated offer "to supplement its already detailed (26 page) interrogatory responses with an even greater level of detail if IFF will lift the 'No JMM Access' designation on Gibson Ex. 5." *Id.* Mane argues that "IFF's failure to include the non-patent claims in its comprehensive list of Rule (30)(b)(6) deposition topics is controlling." *Id.* at 22. (citing *State Farm*, 254 F.R.D. 227, 231-36) (refusing to allow a second corporate representative or individual deposition on topics and claims previously ignored). Contrary to IFF's position that any burden imposed by its request to

10

re-depose Mr. Mane is outweighed by the magnitude of Mane's "new disgorgement claim" Mane argues that "disgorgement is not a cause of action or substantive claim . . . [but] [r]ather, profit disgorgement is the measure of damages for unfair competition under the Lanham Act (15 U.S.C. § 1117) [and] Mane's Lanham Act claim has been in the case since June 2008." *Id.* at 24. Mane further argues that "Jean Mane does not even have access under the Amended Protective Order to the documents used in the Riley report to make the disgorgement calculation – as they are IFF sales spreadsheets designated 'NO JMM-Access.'" *Id.* Ultimately, Mane argues that granting IFF's Motion to Compel would significantly prejudice Mane and condone IFF's lack of diligence and/or discovery tactics.

### III. DISCUSSION

#### A. <u>Dismissal Sanction</u>

Federal Rule of Civil Procedure 37(b)(2)(A) states, in pertinent part, that when a party "fails to obey an order to provide or permit discovery," the court may issue sanctions including, but not limited to: (1) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (2) striking the pleadings in whole or in part; and (3) dismissing the action in whole or in part." IFF has not alleged sufficient circumstances to persuade the Court to impose the serious sanction of precluding Mane from pursuing its infringement claims against IFF's MMG Products as well as its infringement assertions under Claims 9 through 11 of the '865 patent against MMS Products pursuant to Rule 37(b)(2)(A).

The Third Circuit has held that "[s]ound judicial policy favors disposition of cases on their merits rather than on procedural defaults." *Hewlett v. Davis*, 844 F.2d 109, 113 (3d Cir.

1988). In addition, it has been held that "[d]ismissal must be a sanction of last, not first, resort." *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984). The *Poulis* Court has provided guidelines to be employed when analyzing whether the sanction of dismissal of a party's claim for failure to comply with a discovery order is justified:

1. The extent of the party's personal responsibility;
2. The prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;
3. A history of dilatoriness;
4. Whether the conduct of the party or the attorney was willful or in bad faith;
5. The effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and
6. The meritoriousness of the claim or defense.

*Id.* at 868.

Based on the criteria established by *Poulis*, the Court will deny IFF's request for the imposition of a dismissal sanction. Under the first *Poulis* factor, Mane did not violate any discovery order. Mane included MMG/Cooler 2 claims in its November 14, 2008 infringement assertions pursuant to this Court's October 24, 2008 Order and has from the outset of this litigation held the position that IFF's MMG/Cooler 2 contains traces of MMS as a by-product of manufacture. The Court points out that this Court's December 4, 2008 ruling that is memorialized in the December 15, 2008 Order denying further MMG testing, did not preclude Mane from proceeding with its assertions against MMG/Cooler 2 based upon already completed test results. Under the second *Poulis* factor, IFF claims that it will suffer prejudice if now forced to develop new evidence of its ability to reduce any MMS in MMG below a *de minimis* level. However, the Court notes that Mane did in fact include such assertions as part of its November 14, 2008 infringement assertions, despite IFF's contention that it assumed MMG was out of the

case since Mane did not respond to its November 24, 2008 letter identifying the inadequacies of Mane's disclosures concerning MMG Products and stating that IFF regarded MMG as out of the case.

The *Poulis* factors also direct the Court to consider Mane's past history and whether there was bad intent in violating any discovery order. In this case, the Court does not find any violation of a discovery order and, therefore, need not address any alleged dilatoriness or bad faith. Furthermore, *Poulis* also takes into account alternative sanctions. Here, such consideration is unnecessary since the Court has determined that Mane did not violate any discovery order and, thus, precluding any of Mane's claims is too drastic under the circumstances. Lastly, the *Poulis* factors take into account the meritoriousness of Mane's claims that IFF seeks to preclude. There has been an issue raised by IFF as to whether Mane's expert's opinion that 0.074% is an "effective amount" of MMS that is always contained in IFF's "neat MMG" lacks scientific basis. The Court notes that IFF has preserved its right to move under FED. R. EVID. 702-704 or FED. R. CIV. P. 56, in case the Court does not grant the instant Motion and Mane's MMG claims remain in the case. (IFF's Br. at 10, fn 6.) However, the Court needs more information from both parties in order to make a determination as to the merits of Mane's claims, which is not presently before the Court in terms of the instant Motions. Therefore, the Court will deny IFF's Rule 37 Motion and not preclude Mane's claims related to IFF's MMG Products, as well as Mane's infringement assertions under Claims 9 through 11 of the '865 patent.

### B. Re-opening Mr. Mane's deposition

Federal Rule of Civil Procedure 30(a)(2) explains that "[a] party must obtain leave of

court, and the court must grant leave to the extent consistent with Rule 26(b)(2) . . . if the parties have not stipulated to the deposition . . . and the deponent has already been deposed in the case." The Court must weigh the following factors provided in Rule 26(b)(2), including whether:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

*See* FED. R. CIV. P. 30(a)(2), 26(b)(2)(i-iii).

In response to Mane's September 18, 2009 Supplemental Response, IFF seeks to re-open Mr. Mane's deposition for the limited purpose of addressing the following topics: (1) the precise terms of any existing relations – contractual or otherwise – between Mane and these customers, and the sales efforts Mane made with respect to prospective customers; (2) the basis for Mane's allegations that IFF wrongfully interfered with those relationships; and (3) the damage Mane allegedly suffered as a result of any such interference. Accordingly, the Court finds that a limited re-opening of Mr. Mane's deposition for the stated purpose is not cumulative or duplicative, but rather an appropriate response to the recently disclosed information in Mane's Supplemental Response.

Next, the Court finds that IFF did not have prior opportunity in this action to obtain the information. The Court considered Mane's offer to further supplement its Supplemental Response, but concludes that a re-examination of Mr. Mane regarding the factual bases for

14

certain assertions to be the most efficient means of obtaining the information sought since it appears to be information solely in the possession of Mr. Mane. The Court further finds that any burden or expense imposed upon Mane by a limited re-opening of Mr. Mane's deposition is outweighed by its benefit to IFF.

### III. CONCLUSION

For all the above reasons, the Court will deny IFF's Motion for sanctions pursuant to Rule 37 because the *Poulis* factors weigh against precluding Mane's MMG claims. The Court will grant IFF's Motion to re-open the deposition of Jean Mane. An appropriate Order accompanies this Memorandum Opinion.

**Dated: May 6, 2010.**

                                          *s/ Douglas E. Arpert*
                                          DOUGLAS E. ARPERT
                                          UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| V. MANE FILS, S.A., : | |
| : | Civil Action No.: 06-2304 (FLW) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| INTERNATIONAL FLAVORS AND : | ORDER |
| FRAGRANCES INC., : | |
| : | |
| Defendant. : | |

This matter having come before the Court upon Motions by Defendant International Flavors and Fragrances, Inc. ("Defendant" or "IFF") to Preclude Plaintiff's Untimely Infringement Assertions [dkt. entry no. 122] and to Compel the Re-Opening of the Deposition of Jean Mane ("Mr. Mane") [dkt. entry no. 125]; and Plaintiff V. Mane Fils, S.A. ("Plaintiff" or "Mane") having opposed the Motions on December 8, 2009 and December 21, 2009, respectively; and IFF having filed its reply brief in support of its Motion to Preclude Plaintiff's Untimely Infringement Assertions on December 14, 2009 and Mane having filed its sur-reply on December 17, 2009; and the Court having heard oral argument on February 5, 2010; and thereafter, the Court having permitted IFF to supplement the record with an Affidavit of Richard H. Brown as well as the Supplemental Expert Report of Michelle M. Riley; and as a result of the supplementation, the Court having considering Mane's March 1, 2010 response; and the Court having reviewed the parties' submission; and for the reasons stated in the accompanying Memorandum Opinion;

IT IS on this 6th day of May, 2010,

ORDERED that the Motion by IFF to Preclude Plaintiff's Untimely Infringement