<u>**NOT FOR PUBLICATION**</u> [252]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| V.MANE FILS S.A., | : | |
| Plaintiff, | : | Civil Action No. 06-2304 (FLW) |
| v. | : | |
| INTERNATIONAL FLAVORS AND | : | **OPINION** |
| FRAGRANCES, INC., | : | |
| | : | |
| Defendant. | : | |
| _____ | | |

<u>**WOLFSON, United States District Judge:**</u>

Presently before the Court is Defendant International Flavors and Fragrances Inc.'s ("Defendant" or "IFF") appeal from a May 6, 2010 Order by Magistrate Judge Douglas E. Arpert ("Judge Arpert") denying IFF's motion to preclude Plaintiff V. Mane Fils S.A. ("Plaintiff" or "Mane") from pursuing certain infringement claims against a series of IFF products on the basis that Mane failed to comply with an October 24, 2008 Scheduling Order ("Scheduling Order") by: (1) not adequately detailing its "full and final" claim assertions in violation of Federal Rule of Civil Procedure 37(b)(2); and (2) by asserting additional claims that were not disclosed at the time required by the Scheduling Order.[1]  For the reasons that follow, the Court denies Defendant's appeal of Judge Arpert's May 6, 2010 Order.

---

[1] IFF does not appeal Judge Arpert's denial of its motion to compel the re-opening of the deposition of Jean Mane.

**I. FACTS AND PROCEDURAL HISTORY**

Because this patent infringement matter has a significant discovery and procedural

history, the Court will only recount facts relevant to the instant motion. On May 22, 2006, Mane

filed this suit against IFF asserting infringement by IFF of two patents Mane holds relating to the

coolant composition monomenthyl succinate ("MMS"), U.S. Patent Nos. 5,725,865 (the "'865

patent") and 5,843,466 (the "'466 patent") (collectively, the "Patents").  U. Mane Fils S.A. v.

Int'l Flavors & Fragrances, Inc., 249 F.R.D. 152 (D.N.J. 2008) (providing some background of

the case).  Mane asserts that two core cooling ingredients sold by IFF, Cooler 1 and Cooler 2

("Cooler 2" or "MMG Products" or "Neat MMG"[2]), infringe on the Patents. Cooler 2, the subject

of the present appeal, is alleged to infringe Claim 13 of the '865 patent and Claim 5 of the '466

patent. Plaintiff contends that Cooler 2 is a "crude mixture" of monomenthyl glutarate ("MMG"),

dimenthyl glutarate ("DMG"), and MMS, and that the amount of MMS present in Cooler 2

infringes on the Patents.  Pl.'s Br. at 6-7. Mane's initial discovery requests to IFF seeking

information regarding Cooler 2 were served in December 2006.  Id. at 7.

Thereafter, IFF refused to answer discovery requests concerning Cooler 2 on the basis

that its responses would be limited to its product lines to which it "deliberately" added MMS.

See, e.g., Docket No. 129, Exs. F-H. In November 2007, Mane tested an authenticated sample of

Cooler 2 that was provided by IFF. Mane's analysis indicated MMS content of 0.074%, and

because that amount exceeds the 0.01% that Mane asserts is a "significant" level of MMS, Mane

continued to assert infringement against MMG Products.  Docket No.84 at 2-3 n.1; Docket No.

---

[2] These terms have been used interchangeably throughout the litigation to refer to the same product
offered by IFF. The Court continues this practice.

129, Ex. D at ¶ 4; Pl.'s Br. at 25-26.  In May 2008, Mane served a Supplemental Response to IFF's Third Set of Interrogatories, and included a claim chart, in which it alleged that Cooler 2 contains an "effective amount" of MMS and "at least one secondary coolant."  Docket No. 129, Ex. L at 3.  Beginning on August 28, 2008, IFF retained an expert, Harry Lawless ("Lawless"), specifically to investigate and report on the efficacy of Mane's assertions of infringement of the Patents by IFF's MMG Products.  Docket No. 129, Ex. P; Docket No. 187-3 at 1.

Following the close of fact discovery, on October 24, 2008, former Magistrate Judge John Hughes ("Judge Hughes") entered a Scheduling Order, which directed: "Mane shall provide IFF with its full and final claim assertions no later than November 14, 2008."[3]  Docket No. 71 at ¶ 3. On November 14, 2008, Mane provided IFF with its infringement assertions.  Docket No. 124, Ex. I. The first 220 pages of the document addressed IFF's Cooler 1 products.  The final page of the document addressed infringement assertions against IFF's MMG Products:

## NEAT MMG AND MMG FORMULATIONS CONTAINING MMS

### 1. Neat MMG:
Mane asserts indirect infringement by IFF's Neat MMG which contains MMS for the reasons as stated above for Neat MMS and MMS formulations.

### 2. MMG Formulations:
To date, testing has been conducted on only a small sampling of MMG formulations. Based on the results of those tests [footnote], it appears that MMG

---

[3] IFF asserts that the Scheduling Order, as well as Local Patent Rule 3.1, "required Mane to provide a complete claim chart: a) identifying the claims being asserted and the accused products; and b) detailing why each accused product meets the elements of the asserted claims." Def.'s Br. at 13. However, the Scheduling Order had a separate directive relating to claim charts, and the required date for compliance was November 24, 2008. Docket No. 71 at ¶ 4. Indeed, IFF has not alleged that Mane failed to comply with this directive of the Scheduling Order.

> formulations may directly infringe claims such as Claim 13 of the ['865] patent
> and Claim 5 of the ['466] patent. Additionally, these same MMG formulations
> would appear to indirectly infringe the patents in suit for the same reasons as
> discussed above with respect to Neat MMS and MMS formulations. This
> conclusion is based on a consideration of the test results as a whole, including the
> summary sheet and the extensive backup materials. Mane reserves the right to
> supplement this assertion in the event of receiving new information.
>
> [footnote] This conclusion is based on a consideration of the test results as a
> whole, including the summary sheet and the extensive backup materials. Mane
> reserves the right to supplement this assertion in the event of receiving new
> information.

Id. at 221.

IFF believed Mane's MMG infringement assertions to be inadequate because Plaintiff failed to identify a secondary coolant and had not explained how the amount of MMS present in Cooler 2 constituted an "effective amount" – required elements in the patent claims Mane asserts. Def.'s Br. at 15-16, 23-24. Therefore, on November 24, 2008, IFF wrote to Mane, and stated that because the "November 14, 2008 deadline for Mane to make its *full and final* infringement contentions" had passed, IFF believed that "MMG [was] not any part of Mane's case going forward."   Docket No. 124, Ex. J. Mane did not respond to this letter.  Def.'s Br. at 17.

At or around the same time, a dispute arose between the parties regarding procedures used in previous independent lab testing of MMG Products, which led Mane to file a motion to compel re-testing of the MMG Products. On December 4, 2008, Judge Hughes convened an on-the-record telephone conference with the parties to discuss Mane's motion for re-testing. Docket No. 129, Ex. A. Mane was asked by the court to respond to IFF's argument "that the

MMS contained in MMG is not among your infringement contentions." Id. at 5. Mane

responded, "there was infringement and we asserted it," and later noted, "we think the experts – a

lot of testimony will show that [Cooler 2] does infringe," and "[w]e will make our case. . . .

[T]here will be more testimony." Id. at 6, 11. The court denied Mane's motion for further

testing, but did so without prejudice, instructing Mane, "[w]ell, make [your] argument [about

Cooler 2 infringement] regardless of testing." Id. at 12.

On September 20, 2009, as required by the schedule for disclosure of expert reports,

Mane served the liability report of its expert, Francis Farrell ("Farrell").  Docket No. 124, Ex. N.

Farrell reported that the use of 0.01% MMS in formulations was an "effective amount" in

commercial applications, and thus the 0.074% MMS present in Cooler 2 infringed on Mane's

patent. Id. at 25. Also on September 20, 2009, Mane served the exert report of Michele Riley,

who estimated – based on Farrell's report – that Mane's damages were in excess of $25 million.

Docket No. 129, Ex. S at 2.

On November 5, 2009, IFF submitted the rebuttal expert report of its damages consultant,

Andrew Carter ("Carter"), in which potential damages for Cooler 2 infringement were discussed.

Docket No. 129, Ex. B. Carter reported that "[MMS] is present as an impurity in one of the raw

materials, glutaric anhydride, used to make [Cooler 2]." Id. at 33. Carter further acknowledged

that IFF was notified of Mane's assertion that MMG infringed on Mane's Patents on May 4,

2007.  Id. at 18. On the same day, IFF also produced a report from Lawless, who contended that

the amount of MMS in Cooler 2 was not an effective amount.  Docket No.124, Ex. P at ¶ 30.

Lawless' report stated that the "[t]he MMG sample used [in the testing] was supplied by IFF free

of MMS." Id. at ¶ 32.

Mane viewed this as an admission that IFF had attempted to remove or eliminate Cooler 2's MMS content, an accusation that IFF had denied in the past.  Docket No. 131 at 11-12. Mane also interpreted IFF's submission of the opinions as an admission of the subject matter's relevance.  Id. at 12. Therefore, on November 12, 2009, in preparation for depositions scheduled to take place between November 2009 and January 2010, Mane demanded that IFF supplement its prior discovery responses relating to MMG, provide complete expert disclosures, and produce the information concerning MMG that Mane asserts IFF withheld during discovery. See Docket No.129, Ex. R.

Only after Mane sought these disclosures – more than a year after Mane filed its "full and final" claim assertions as required by the Scheduling Order – did IFF request a stay of expert discovery and depositions on November 16, 2009, so that IFF could, "by formal motion . . . move to strike Mane's belated MMG claims from the case."  Docket No. 129, Ex. S at 2. Thereafter, on November 24, 2009, IFF filed its motion for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2), which IFF titled "Motion to Preclude Plaintiff's Untimely Claim Assertions."  Docket No. 122. IFF argued that Mane's November 14, 2008 claim assertions against MMG Products were incomplete and wholly inadequate because "Mane stated only that it 'appears' that [MMG Products] 'may' indirectly infringe claims 'such as' claim 13 of ['865] Patent and claim 5 of the ['466] Patent."  Docket No. 123 at 8.

Further, IFF contended that it had been "ambushed" by Mane's submission of Farrell's report on the MMS content of Cooler 2, and that because Mane had received IFF's November 24, 2008 letter, it was IFF's position that "Mane well understood . . . that MMG was no longer in the case."  Id. at 10, 16. IFF asserted that Judge Hughes found at oral argument on December 4,

6

2008, that "Mane's full and final infringement contentions did not include IFF's [Cooler 2]

product," and thus, IFF argued that Mane was flouting an order of the court by continuing to

pursue its Cooler 2 infringement claims.  Id. at 9. Consequently, IFF argued that Mane's claim of

$25 million in damages, in connection with Mane's failure to report that the test that showed

0.074% MMS in MMG was the basis for all of Mane's Cooler 2 claims, constituted a "new

theory" that Mane introduced in violation of two orders of Judge Hughes: 1) the October 24,

2008 Scheduling Order requiring Mane to assert its full and final claims by November 14, 2008;

and 2) the December 15, 2008 Order that memorialized the court's December 4, 2008, decision

not permitting MMG re-testing.  Id. at 2, 8-9. As a result of Mane's alleged failure to comply with

these two Orders, IFF requested that the court impose sanctions that would prevent Mane from

pursuing its MMG infringement assertions.[4]

On May 6, 2010, Judge Arpert issued an Opinion and Order denying IFF's motion for

sanctions.[5]  V. Mane Fils, S.A. v. Int'l Flavors & Fragrances, Inc., No. 06-2304, 2010 WL

1855873 (D.N.J. May 6, 2010).  Judge Arpert determined that sanctions were not appropriate

since Mane had not violated any discovery order.  V. Mane, 2010 WL 1855873 at *7-*8.   In that

connection, he also examined the requirements of a motion for sanctions under Rule 37(b)(2)(A),

as well as the balancing test to decide such a motion set forth in Poulis v. State Farm Fire and

Cos. Co., 747 F.2d 863, 869 (3d Cir. 1984) and the Third Circuit's preference for allowing

---

[4] IFF also argued that Mane should be precluded "from asserting claims against MMS Products
under Claims 9-11 of the '865 patent, which are included in the Farrell Report, but were not included
in Mane's 'full and final' claim assertions." ( Docket No. 123 at 4). On appeal, IFF did not renew
this argument, and thus, the Court will not consider it here.

[5] Following Judge Hughes' retirement, this case was reassigned to Judge Arpert on April 6, 2009.

claims to proceed on their merits.  Id.  Specifically, Judge Arpert found that, contrary to IFF's assertions, the December 4, 2008 ruling and subsequent Order "did not preclude Mane from proceeding with its assertions against MMG/Cooler 2 based upon already completed test results." Id. at *7.  Additionally, Judge Arpert determined that Mane "did in fact include [Cooler 2] assertions as part of its November 14, 2008 infringement assertions despite IFF's contention that it assumed MMG was out of the case since Mane did not respond to its November 24, 2008 letter[.]" Id. On May 20, 2010, IFF moved for reconsideration of the May 6, 2010 Opinion and Order.  Docket No. 235. On August 19, 2010, Judge Arpert denied IFF's motion for reconsideration on the basis that "IFF ha[d] not identified any factual or legal issue that was overlooked by this Court." Docket No. 250.

Thereafter, Defendant filed the instant appeal, arguing that this Court should review the matter under a *de novo* standard, reverse Judge Arpert's May 6, 2010 Order, and impose sanctions dismissing Mane's Cooler 2 infringement assertions.  Def's Br. at 21-22. Plaintiff filed opposition, arguing that Judge Arpert's decision should be reversed only if the Court finds an abuse of discretion, which Plaintiff contends did not occur.  Pl.'s Br. at 1-2. Defendant filed a reply brief and Plaintiff filed a sur-reply brief.[6]

## II. STANDARD OF REVIEW[7]

---

[6] As Plaintiff notes, IFF previously moved to strike a reply brief filed by Mane concerning another dispute in this litigation, arguing that "Local Civil Rule 72.1 does not allow for reply submissions on appeals from non-dispositive orders of a Magistrate Judge unless the responding party files a cross-appeal."  Docket No. 85. Plaintiff notes that IFF did not obtain advance consent from Mane or the Court to file its instant reply papers, but does not object to their submission. Pl.'s Reply Br. The Court will consider all moving, opposition and reply briefs.

[7] The court hears this matter pursuant to FED. R. CIV. P. 72(a), L. CIV. R. 72.1(c), and 28 U.S.C. § 636(b).

8

As an initial matter, the parties dispute the standard of review applicable to this appeal. According to IFF, Judge Arpert's May 6, 2010 Order constitutes an erroneous interpretation of the October 24, 2008 Scheduling Order, and, thus Judge Arpert's interpretation is itself a dispositive "interpretation of law" that requires *de novo* review.   Def's Br. at 21; Def's Reply Br. at 12. In response, Mane contends that IFF's theories are legally deficient, and argues for review under an abuse of discretion standard. For the following reasons, the Court finds that an abuse of discretion standard applies.

Initially, the Court notes that it is not persuaded by IFF's argument that Judge Arpert's interpretation of the October 24, 2008 Scheduling Order is an "interpretation of law" warranting *de novo* review.   It is well-established that a magistrate judge's ruling concerning discovery is non-dispositive. See Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc., 629 F. Supp.2d 416, 433 (D.N.J. 2009).  Indeed, as this Court noted in an appeal of a 2008 discovery dispute between the instant parties, in which the IFF argued for *de novo* review  "[w]here the appeal seeks review of a matter within the broad discretion of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, is applied." V. Mane Fils S.A. v. Int'l Flavors & Fragrances Inc., No. 06-2304 (FLW), 2008 WL 4606313, *3 (D.N.J. Oct. 15, 2008) (citing Port Auth. v. Affiliated FM Ins. Co., 2001 U.S. Dist. LEXIS 7579 (D.N.J. Mar. 29, 2001)); see also Eisai Co., Ltd., 629 F. Supp. 2d at 433-34 (noting that a magistrate judge's ruling on non-dispositive matters such as discovery motions are "entitled to great deference and [are] reversible only for abuse of discretion.") (quoting Kresefky v. Panasonic Commc'ns & Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996)); Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998); Env't Tectonics Corp., Int'l v. W.S. Kirkpatrick & Co., Inc., 659 F.Supp.

1381, 1399 (D.N.J. 1987), mod., 847 F.2d 1052 (3d Cir. 1988), aff'd, 493 U.S. 400 (1990).  "An abuse of discretion occurs: 'when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted.'"  Richards v. Johnson & Johnson, Inc., No. 05-3663(KSH), 2008 WL 544663, at * 2 (D.N.J. Feb. 26, 2008) (quoting Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 115 (3d Cir.1976) (internal quotation omitted )); see also United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir.2003), cert. denied, 541 U.S. 1074 (2004) ("An abuse of discretion occurs when a "material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.") "This test displays considerable deference to the determination of magistrates in such matters."  7 Moore's Federal Practice P 72.03(7.-3) at 72-42 (1989).[8]

Moreover, IFF's reliance on Thomas v. Ford Motor Co., 137 F. Supp. 2d 575, 579 (D.N.J. 2001), for the proposition that this Court should perform a *de novo* review of the legal conclusions reached by a magistrate judge in considering a non-dispositive motion is unavailing. In Ford Motor, the court was concerned with determining whether, as a matter of law, a qualified

---

[8]Conversely, when reviewing a case *de novo*, "the phrase 'contrary to law' indicates plenary review as to matters of law." Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992); accord In re Human Tissue Products Liability Litigation, No. 06-135, 2009 WL 1097671, * 1 (D.N.J. Apr. 23, 2009) (citation omitted); see also Mruz v. Caring, Inc., 166 F. Supp. 2d 61, 66 (D.N.J. 2001) ("[T]his Court will conduct a *de novo* review of a [m]agistrate [j]udge's legal conclusions."); accord Cooper Hosp./Univ. Med. Ctr. v. Sullivan, 183 F.R.D. 119, 127 (D.N.J. 1998) ("A ruling is contrary to law if the Magistrate Judge has misinterpreted or misapplied applicable law."); Kounelis v. Sherrer, 529 F.Supp.2d 503, 518 (D.N.J. 2008) (citing Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998)).

10

litigation privilege existed in New Jersey law, a legal theory which the court described as an "all-or-nothing concept . . . [that] [e]ither . . . applies, and therefore protects absolutely, or . . . does not apply, and offers no protection." Id. at 582. Conversely, in the instant matter, Judge Arpert was deciding whether Mane complied with the terms of Scheduling Order by timely disclosing its "full and final" claim assertions.  In that regard, Judge Arpert examined the procedural history and the actions of the parties in determining whether the Scheduling Order had been violated and whether there had been an abandonment of a claim.  Unlike Ford Motor, Judge Arpert's decision regarding the Scheduling Order was not an application or interpretation of law or legal principles, i.e. whether a privilege exists as a matter of law, and is, instead, the type of non-dispositive matter that is left to the Magistrate's discretion. See, e.g., Saul v. Dominiack, 06-CV-2091-LRR, 2007 WL 2682526 (N.D. Iowa July 31, 2007) (labeling a magistrate judge's decision to enforce a scheduling deadline as non-dispositive) (citing Soliman v. Johanns, 412 F.3d 920, 921-23 (8th Cir. 2005)); Roberts v. Sony Corp., 2:04-CV-673 TS, 2006 WL 3469591 at *1, n. 11 (D. Utah Nov. 30, 2006) (noting that a motion to reconsider and vacate a scheduling order is non-dispositive); Cuenca v. University of Kansas, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002) (magistrate judge's ruling concerning the amendment of a scheduling order is non-dispositive). Interpreting the scope of a scheduling order and whether it has been violated falls squarely within the contours of a non-dispositive ruling and does not involve a question of law.  Indeed, the Court agrees with Mane that under IFF's interpretation, "all discovery compliance issues would be subject to de novo review, rather than the actual abuse of discretion standard," Pl.'s Reply Br. at 1; such a broadening of the matters subject to de novo review would fly in the face of well-established precedent in this Circuit.  See, e.g., Kresefky, 169 F.R.D. at 64.

11

Furthermore, the Court finds Mane's assertion that its motion for sanctions should be considered dispositive, and, therefore, subject to *de novo* review, equally unavailing. "Matters concerning . . . pretrial discovery matters are invariably treated as non-dispositive pretrial motions by courts in this jurisdiction and elsewhere."  Caring, Inc., 166 F.Supp.2d at 65-66 (quoting Andrews v. Goodyear Tire & Rubber Co., Inc., 191 F.R.D. 59, 68 (D.N.J. 2000) (citing cases)).  Specifically, "[a] magistrate judge's ruling concerning discovery, including sanction orders, are non-dispositive motions."  Wachtel v. Guardian Life Ins. Co., 232 F.R.D. 213, 217 (D.N.J. 2005); see also, e.g., Tumbling v. Merced Irrigation Dist., 1:08CV1801 LJO DLB, 2010 WL 4321828, at *2 (E.D. Cal. Oct. 21, 2010) (classifying a motion to impose sanctions precluding testimony from plaintiff's witness as non-dispositive). Indeed, motions to impose discovery sanctions under Rule 37 may only be considered dispositive "in those instances in which a magistrate judge aspires to impose a sanction that fully disposes of a claim or defense." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999); see also 14 Moore's Federal Practice § 72.02(7)(b) (3d. ed. 2008) ("When a party brings a motion for sanctions, the sanction chosen by the Magistrate Judge rather than the sanction sought by the party governs the determination of whether the decision is dispositive."). Here, no sanctions were imposed by Judge Arpert; thus, this appeal is not dispositive and the Court will review Judge Arpert's decision for abuse of discretion.

## III. ANALYSIS

## A. Judge Arpert Did Not Abuse His Discretion

In this appeal, IFF argues that the Court should reverse Judge Arpert's May 6, 2010

Order, in which he found that Mane had not violated any discovery order including the October

24, 2008 Scheduling Order.  First, IFF contends that Judge Arpert erred  when he determined that

Mane had not violated the Scheduling Order, which required Mane to file its "full and final"

claim infringement assertions by November 14, 2008.  Second, IFF argues that Judge Hughes

recognized that MMG Products were no longer a part of the case during a telephone conference

on December 4, 2008, and thus Judge Arpert erred when he found that Mane had not violated the

Scheduling Order.  For the reasons that follow, the Court finds that Judge Arpert did not abuse

his discretion.

**1. Mane Did Not Violate the October 24, 2008 Scheduling Order**

IFF makes several arguments in an attempt to persuade the Court to find that Mane

violated the October 24, 2008 Scheduling Order.  First, IFF contends that it was under the

impression that MMG was no longer a part of the case as early as October 24, 2008, when Mane

submitted its"full and final" claim assertions, and that this impression lasted until the filing of

Farrell's report approximately ten months later.  Further, IFF contends that the "full and final"

claim assertions were inadequate, and that the subsequent report of Mane's expert Farrell, as well

as declarations made by Mane's CEO Jean Mane, impermissibly introduced new theories into the

case that were not disclosed in Mane's "full and final" claim assertions.

**i. Chronology**

In the underlying matter, IFF argued that it considered MMG to be out of the case after

Mane did not respond to IFF's November 24, 2008 letter, in which IFF explained that it found

13

Mane's Cooler 2 infringement assertions to be inadequate.  V. Mane, 2010 WL 1855873, at *7.

As a result, IFF contended that it was "ambushed" by Mane on September 20, 2009 when IFF

served the expert report of Farrell, which supported Mane's claims of infringement by MMG

Products.  Id. at *2.  In his Opinion,  Judge Arpert did not agree, finding, instead, that "Mane did

in fact include such assertions as part of its November 14, 2008 infringement assertions[.]" Id. at

*7.

Initially, although Judge Arpert did not specifically address this issue, this Court does not

understand how IFF's act of sending a letter on November 24, 2008, to which Mane did not

respond, would extinguish claims that Mane included in its November 14, 2008 infringement

assertions.  Moreover, the Court questions why IFF continued to respond to infringement

assertions against MMG Products if IFF believed that Mane was no longer pursuing infringement

assertions against MMG.  For example, the Court notes that IFF's claim construction brief, filed

in January 2009, contained a section on Mane's Cooler 2 infringement assertions.  Docket No. 87

at 10-12.  In the same month, the parties addressed MMG Products when Mane objected to Judge

Hughes' December 15, 2008 Order denying further testing of MMG Products.  Docket No. 82 at

1; Docket No. 129, Ex. D. Further, IFF continued to retain the services of its MMG expert,

Lawless, throughout 2009.  Docket No. 129, Ex. Q.  Lastly, in the year after Mane filed its claim

assertions, IFF served expert reports of Carter and Lawless, in which infringement assertions

against MMG Products were specifically addressed in great detail.  Because IFF has continued to

respond to the MMG infringement assertions, the Court finds that IFF has not established that it

actually considered, and relied upon,  Mane's MMG claims being out of the case.  See Def.'s Br.

at 17.

In addition, IFF claims it has been prejudiced by Mane's failure to comply with the Scheduling Order.   Def's Br. at 35.   For example, in the underlying matter, IFF contended that it was prejudiced by "having to respond to Mane's after-the-eleventh hour allegations . . . [since] IFF was forced to, among other things, develop new evidence of its ability (and the cost) to ensure that any MMS in MMG is below a de minimis level."   Docket No. 123 at 15.   Indeed,  IFF claimed that if it "had had notice a year ago that Mane would pursue a theory that all of IFF's MMG Products infringe based on a single data point, IFF would have had more time to pursue rebuttal evidence and perhaps would have been better able to build its case."   Id. Despite IFF's argument, Judge Arpert found that because Mane included its MMG infringement assertions in its November 14, 2008 filing, IFF could not claim to suffer prejudice from having to defend itself against those claims.   V. Mane, 2010 WL 1855873, at *7.   The Court agrees.

Prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party. Prejudice also includes deprivation of information through noncooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." Harrington v. All Am. Plazas, Inc., No. 08-3848, 2010 WL 2710573, at *3 (D.N.J. July 7, 2010) (citing Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994)).   The Third Circuit has stated that "while prejudice for the purpose of Poulis analysis does not mean 'irremediable harm,' the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial."   Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).   Thus, for example, the Ware Court precluded the introduction of evidence of damages at trial as a sanction for a plaintiff corporation that had

15

repeatedly failed to comply with discovery requests.  Id.  Plaintiff's non-compliance included not

filing its damages calculation until a week before trial, "impeding [defendant's] ability to prepare

a full and complete defense.  Id. at 223.

Unlike in Ware, as discussed above, the record demonstrates that IFF was fully aware that

MMG  was still a part of the case during the year between Mane's filing of its "full and final"

claim assertions and IFF's filing of its motion for sanctions. This fact is evidenced by both IFF

and Mane addressing the MMG infringement claims in documents filed with the court during

that period, as well as IFF's decision to continue to retain Lawless as an expert in 2009.  Docket

No. 82 at 1; Docket No.87 at 10-12; Docket No. 129, Ex. D. Moreover, as discussed above, IFF

has not demonstrated that IFF and its sophisticated counsel actually believed that Mane was no

longer pursuing its MMG infringement assertions.  Finally, the Court notes that when IFF and

Mane appeared before Judge Arpert for a hearing on IFF's motion for sanctions, Judge Arpert

recognized that IFF had already taken the necessary steps to respond to issues that IFF claimed

were prejudicial.  Docket No. 252, Ex. A at 9 ("But you've done it. . . . So, what's the prejudice

going forward? . . . You may have had to scramble, and if you were blindsided, you had to react

in the way you've just described.").  Thus, Judge Arpert did not abuse his discretion when he

found that any prejudice to IFF was insufficient to warrant dismissal of Mane's MMG claims.

### ii. Adequacy of MMG Claims

Moreover, IFF contends that Mane's MMG infringement assertions are inadequate since

they appear on only one page of Mane's 221 pages of claim assertions.  Def's Br. at 24-26.

However, what IFF overlooks is that in explaining its MMG claim assertions, Mane incorporated

by reference the 220 pages of analysis it had prepared on the products to which IFF is alleged to "deliberate[ly]" add MMS. Docket No. 129, Ex. I at 221.  In the 220 pages relating to MMS, Mane identified 0.01% MMS as the lowest "effective amount" of MMS "deliberately" added by IFF to its products, Id. at 6, and, as Mane points out, "it would be anomalous for 0.01% MMS content to be an "effective" amount when used in a Cooler 1 formulation, yet not be effective when [0.074%] is present in a Cooler 2 formulation." Pl.'s Br. at 10.  Thus, the Court finds that Judge Arpert did not abuse his discretion in finding that Mane complied with the Scheduling Order's request to set forth "full and final" claim assertions and that Mane "has from the outset of this litigation held the position that IFF's MMG/Cooler 2 contains traces of MMS as a by-product of manufacture."  V. Mane, 2010 WL 1855873, at *7.

### iii. Report of Mane's Expert Farrell

In addition, IFF argued before Judge Arpert that because of Mane's failure to comply with the Scheduling Order, it was "ambushed" by the release of the report of Mane's expert, Farrell, on September 20, 2009.  Docket No. 123 at 10. On appeal, IFF contends that Farrell's report impermissibly alleged direct infringement, whereas Mane's "full and final" claim assertions only alleged indirect infringement.  Def.'s Br. at 17-19, 24.  Further, IFF takes issue with Farrell's statement that "[t]he amount of MMS in [MMG Products], namely 0.074% . . .is greater than the amount of MMS intentionally added to MMS formulations which I have concluded is an effective amount . . .when combined with the secondary coolant" menthyl acetate.  Id. at 18.  As a result, IFF interprets Farrell's report as a tactic by Mane to allow it to assert new, previously undisclosed theories, including that Cooler 2 always contains 0.074% MMS, that Cooler 2 always contains menthyl acetate as a secondary coolant, and 0.074% MMS

17

always constitutes an effective amount in MMG Products.[9]  Id. at 18.  IFF's arguments are unavailing.

IFF's claim of surprise is belied by Mane's assertion, which IFF does not dispute, that when the parties met for a mediation conference on September 24, 2009, IFF did not claim that Farrell's report was either procedurally irregular or sanctionable. Id. at 9-12; Pl.'s Br. at 13-14. Moreover, while Farrell did assert direct infringement, Farrell did so in concluding that "each of the formulations . . . . infringe one or more of the patent claims directly, or, if used in products, infringe one or more claims directly." Docket No. 124 at 5 (emphasis added).  Indeed, IFF has pointed to no case law to support the contention that the conclusions contained in an expert report must match the formal allegations previously asserted by a party.  In contrast, Mane argues that even if the Farrell report can be construed to provide additional support for Mane's claims, such support is not sanctionable.  See Convolve, Inc. V. Compaq Computer Corp, No. 00-5141, 2007 U.S. Dist. LEXIS 15747 (S.D.N.Y. Mar 7, 2007).[10]  Finally, Mane did not change its

---

[9] IFF contends that because MMG Products contain 900 times more MMG than the amount of MMS Mane alleges to be present, and that "Cooler 2 is diluted more than 200-fold in any end-product use[,]" Farrell's assertion that 0.074% MMS always constitutes an "effective amount" is incorrect. See Def.'s Br. at 18-19. As explained infra, at this juncture, the Court declines to weigh the merits of this particular contention.

[10] Importantly, in Convolve, the court permitted a defendant to amend certain invalidity contentions consistent with the prior submissions of an expert witness. 2007 U.S. Dist LEXIS 15747 at *18.  There, the court explained that "[a]mendment may be permitted where, although the moving party did not revise its formal infringement or invalidity contentions in a timely manner, its adversary nevertheless had adequate notice of the substance of the moving party's position," and further noted that an expert report that explains or expands upon infringement assertions may "be considered constructive amendment to final infringement contentions ." Id. at *11-*13.  Here, unlike in Convolve, IFF is attacking Farrell's report and seeking sanctions not on the basis that Mane is attempting to amend its infringement assertions, but merely because Farrell concluded in his report that it was possible that MMG Products could directly infringe on Mane's Patents.

position on Cooler 2 infringement after the submission of Farrell's expert report.  Indeed, since November 2008, at the time it complied with the Scheduling Order, Mane has continued to allege that "Cooler 2 products infringe for the same reasons and to the same extent as its Cooler 1 products, regardless of whether the MMS content of these products was 'deliberate' or a by-product of manufacturing."  Pl.'s Br. at 25.  Thus, the Court does not find that IFF's reliance on limited portions of Farrell's report – such as his conclusions regarding the effective amount of MMS and the presence of a secondary coolant – would support a finding that Mane somehow impermissibly altered the infringement claims set forth in response to the Scheduling Order.   As a result, the Court finds that Judge Arpert did not abuse his discretion by finding there was no violation of the Scheduling Order.

**iv. Statements by Jean Mane**

Lastly, IFF contends that on April 14, 2010, Mane's CEO, Jean Mane, in opposing a yet-undecided motion for summary judgment on Mane's MMG claims, made additional declarations regarding Cooler 2 that were not included among Mane's "full and final" claim assertions, including, for example, that MMS is always present in MMG Products in amounts of 0.074% or greater.  Pl's Br. at 19-20 (citing Docket No. 207, Ex. 1 at ¶ 33).  Further, IFF challenges Jean Mane's position that "cooling and salivation are thus interrelated," which IFF asserts is a theory that Mane had not previously disclosed.  Docket No. 207, Ex. 1 at ¶ 39.   In other words, IFF argues that Mane's efforts to assert new theories of infringement based on Jean Mane's declaration are improper.  Def's Br. at 20.

Initially, the Court notes that IFF received Jean Mane's summary judgment declaration approximately three weeks before Judge Arpert issued his Order denying IFF's motion for sanctions, yet,  IFF failed to address these new concerns until approximately two months later, when IFF filed a motion for reconsideration on June 21, 2010.   Docket No. 235 at 16-18. However, Judge Arpert did not find IFF's argument concerning Jean Mane's declaration to be compelling and denied IFF's motion for reconsideration in its entirety.   The Court agrees. Indeed, as discussed above, the Court does not find that IFF's parsing of Jean Mane's declaration in an attempt to demonstrate that Mane was advancing new theories (and, thus, that Mane had not disclosed its full and final claim assertions)  amounts to a violation of the Scheduling Order. Thus, the Court finds that Judge Arpert did not abuse his discretion when he determined that Mane had not violated the October 24, 2008 Scheduling Order.

**2. December 4, 2008 Transcript**

IFF also contends that during a telephone conference on December 4, 2008, on a motion by Mane to re-test certain MMG Products, Judge Hughes, "who was so involved with this issue that he said he could hear the parties' arguments in his sleep[,] recognized that Mane's 'full and final' claim assertions did *not* include any MMG claims."  Def's Br. at 29 (emphasis added). In support of this argument, IFF points to Judge Hughes' denial of Mane's request to re-test MMG Products and a comment by Judge Hughes that "the Defndant's point out, I thought, sort of persuasively, that the MMS contained in the MMG is not among your infringement contentions and thus this is sort of an academic inquiry."  Id. at 28-29 (quoting Docket No.77 at 5.)   The Court disagrees with IFF's interpretation of the December 4, 2008 telephone conference.

Initially, the Court notes that on numerous occasions during the December 4, 2008 conference call, Mane made clear that it would continue to pursue its MMG infringement claims regardless of additional testing.  For example, Mane stated, "[w]e think we can get experts in to read this and we think the experts – a lot of testimony will show that it does infringe," and "we have clear indication that [MMG is] present and we will make that argument . . .and continue to make it."  Id. at 11-12.   Moreover, the Court notes that while Judge Hughes' comments reflect his view that Mane may have difficulty with the MMG infringement claims absent additional testing, see Docket No.77, at the same time, Judge Hughes still told Mane, "[w]ell, make [your] argument [about Cooler 2] regardless of testing."  Id. at 12-13.   Thus, it is clear that Judge Hughes did not endeavor to prevent Mane from continuing to pursue its Cooler 2 claims. Rather, Judge Hughes' denial of Mane's motion for further MMG testing, as well as his own words, establish that the court was instructing Mane that its Cooler 2 infringement claims would have to be made based on existing results, but without further testing.  For these reasons, the Court finds that Judge Arpert did not abuse his discretion by finding that Mane was not precluded from pursuing its MMG infringement claims during the December 4, 2008 telephone conference.

**B. Poulis Factors**

Finally, IFF argues that Mane's MMG infringement assertions so "lack[ed] substance or specificity" that Judge Arpert's denial of IFF's motion for sanctions constituted an abuse of discretion.  Def.'s Br. at 24.  Federal Rule of Civil Procedure 37(b)(2)(A) empowers District Courts to dismiss an action if a party fails to obey an order to provide or permit discovery.  Shahin v. Delaware, 345 F. App'x. 815, 816 (3d Cir. 2009). The Third Circuit has enunciated the

six-factor Poulis balancing test to analyze the propriety of a lower court's decision on a motion

for sanctions that seeks dismissal of a claim.

> [The analysis] will be guided by the manner in which the trial court
> balanced the following factors, which have been enumerated in the earlier cases,
> and whether the record supports its findings: (1) the extent of the party's personal
> responsibility; (2) the prejudice to the adversary caused by the failure to meet
> scheduling orders and respond to discovery; (3) a history of dilatoriness; (4)
> whether the conduct of the party or the attorney was willful or in bad faith; (5) the
> effectiveness of sanctions other than dismissal, which entails an analysis of
> alternative sanctions; and (6) the meritoriousness of the claim or defense.

Shahin, 345 F. App'x. 815, 816-17 (3d Cir. 2009) (citing Poulis v. State Farm Fire & Cas. Co.,

747 F.2d 863, 868 (3d Cir. 1984)).  This is not a "mechanical calculation," and "not all of the

Poulis factors need be satisfied in order to dismiss a complaint."   Mindek v. Rigatti, 964 F.2d

1369, 1373 (3d Cir. 1992).  "Dismissal must be a sanction of last, not first, resort," and the Poulis

factors "should be weighed by the district courts in order to assure that the 'extreme' sanction of

dismissal ... is reserved for the instances in which it is justly merited."  Poulis, 747 F.2d at 870;

see also Emerson v. Thiel College, 296 F.3d 184, 190 (3d. Cir. 2002) ("[D]ismissal with

prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of

reaching a decision on the merits.").  This comports with the Third Circuit's view that "[s]ound

judicial policy favors disposition of cases on their merits rather than on procedural defaults."

Hewlett v. Davis, 844 F.2d 109, 113 (3d Cir. 1988).

On appeal, IFF argues that had Judge Arpert not abused his discretion, and, instead, found

that Mane had violated the Scheduling Order under the first Poulis factor, Judge Arpert would

have analyzed the other Poulis factors differently, and imposed sanctions precluding Mane from

pursuing its MMG claims.  Based upon the Court's finding that Judge Arpert did not abuse his

discretion in finding that Mane had not violated the Scheduling Order, IFF's argument here falls under its own weight.

IV. CONCLUSION

Based on the foregoing, the Court will affirm the May 6, 2010 Order of Judge Arpert. An order will be entered consistent with this Opinion.

Dated: April 8, 2011                                    /s/ Freda L. Wolfson
                                                         Freda L. Wolfson, U.S.D.J.